## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JILL KAISER,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

Case No. 23-10431
Hon. Jonathan J.C. Grey

_____/

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Jill Kaiser seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits under the Social Security Act (the "Act"). Kaiser filed a motion for summary judgment (ECF No. 6), the Commissioner filed a response and cross-motion for summary judgment (ECF No. 8), and Kaiser filed a reply (ECF No. 9).

For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Kaiser's motion for summary judgment, **DENIES** the Commissioner's motion for summary judgment, and **REMANDS** this

case to the Social Security Administration ("agency") for further proceedings consistent with this order.

## I.    BACKGROUND

### A.    Procedural History

On March 23, 2020, Kaiser filed an application for disability insurance benefits, alleging disability as of July 20, 2019. (ECF No. 4-6, PageID.242.) Kaiser later offered to amend her disability onset date to April 1, 2020 (*id.* at PageID.262), but the Commissioner declined that offer and assessed the claim for disability from July 20, 2019 forward. (ECF No. 4-3, PageID.30.) Kaiser's claim was denied initially on April 14, 2021, and upon reconsideration on September 17, 2021. (ECF No. 4-5, PageID.128, 145.)

Kaiser requested a hearing and appeared with counsel for a telephone hearing before Administrative Law Judge Janet L. Alaga-Gadigian (the "ALJ") on January 4, 2022. (ECF No. 4-3, PageID.29.) On February 7, 2022, the ALJ issued an unfavorable decision. (*Id.* at PageID.29–41.) The Appeals Council denied review on December 20, 2022, which made the ALJ's decision final. (*Id.* at PageID.16); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543–44 (6th Cir. 2004).

2

**B.    The Disability Framework**

Under the Act, disability insurance benefits are available only for those who have a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *accord* 20 C.F.R. § 404.1505(a) (Aug. 24, 2012) (nearly identical definition to the statute with added details promulgated by the agency)..

The Commissioner determines whether a claimant is disabled through a five-step sequential analysis. 20 C.F.R. § 404.1520 (Aug. 24, 2012) (five-step analysis for disability benefits and supplemental payments). The Commissioner determines whether a claimant is disabled through a five-step sequential analysis. 20 C.F.R. § 404.1520 (Aug. 24, 2012) (five-step analysis for disability benefits and supplemental payments). First, if the claimant is engaged in significant gainful activity, no disability will be found. 20 C.F.R. § 404.1520(a)(4) (Aug. 24, 2012). Second, the agency will find no disability if the claimant

does not have a severe impairment or combination of severe impairments for a continuous period of at least 12 months. *Id.* Third, the Commissioner will determine that the claimant is disabled if the claimant's severe impairments meet or equal one of the impairments listed in the agency's regulations. *Id.* Fourth, if the claimant's impairments meet no listing, and the claimant has the residual functional capacity ("RFC") to perform any past relevant work, no disability will be found. *Id.* Fifth, even if the claimant is unable to perform their past relevant work, benefits are denied if the claimant can adjust to other work given the claimant's RFC, age, education, and work experience. *Id.* If the Commissioner "makes a dispositive finding at any point in the five-step process," the evaluation will not proceed to the next step. *Id.*; *Colvin*, 475 F.3d at 730.

The claimant bears the burden of proof through step four, and the claimant must show "the existence and severity of limitations caused by [their] impairments and the fact that [they] are precluded from performing [their] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)); *accord* 20 C.F.R. § 404.1512(a)(1) (Mar. 27, 2017). At step

4

five, the burden shifts to the Commissioner, and the Commissioner must show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [their] RFC and considering relevant vocational factors." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007).

### C.    The ALJ's Application of the Disability Framework

Kaiser was 39 years old on the alleged disability onset date. (ECF No. 4-3, PageID.40.) She has a bachelor's degree. (*Id.*) Prior to that, she had worked as a general duty nurse and head nurse. (ECF No. 4-6, PageID.262.) Kaiser alleges disability due to rheumatoid arthritis and anxiety. (ECF No. 4-7, PageID.267.) The ALJ found that Kaiser met the insured status requirements of the Act through December 31, 2025. (ECF No. 4-3, PageID.31.)

The ALJ applied the five-step disability analysis and found at step one that Kaiser had not engaged in substantial gainful activity since April 1, 2020, the date Kaiser offered to make her amended onset date because she had engaged in substantial gainful activity between July 20, 2019 and March 31, 2020. (*Id.* at PageID.31–32; ECF No. 4-6,

PageID.262.) At step two, the ALJ found that Kaiser had the following

severe impairments:

> degenerative disc disease in the lumbar spine,
> osteophytes/Schmorl's nodes in her thoracic spine;
> degenerative disc disease in her cervical spine; osteoarthritis
> in her right hip, knees, and right shoulder with a right
> shoulder tendon tear; rheumatoid arthritis, status post
> arthrodesis of the right wrist and status post arthroscopy of
> the left wrist; fibromyalgia; obesity; major depressive
> disorder; generalized anxiety disorder; adjustment disorder;
> attention deficit hyperactivity disorder (ADHD); and panic
> disorder.

(ECF No. 4-3, PageID.32.)

At step three, the ALJ found that Kaiser did not have an

impairment or combination of impairments that met or medically

equaled one of the listings in the regulations. (*Id.* at PageID.33.) Next,

the ALJ determined Kaiser has the RFC to perform sedentary work as

defined in 20 C.F.R. § 404.1567(a), except that Kaiser:

> can no more than frequently lift and carry, and no more than
> occasionally push and pull; never climb ladders, ropes, or
> scaffolds; never crawl; and only occasionally balance, climb
> ramps and stairs, stoop, crouch, and kneel. She can never
> reach overhead with her bilateral upper extremities, but can
> otherwise frequently reach; and she can frequently engage in
> gross and fine manipulation. She should have no exposure to
> hazardous machinery or unprotected heights, extreme cold,
> extreme heat, or vibration. The claimant can perform
> unskilled work which can be learned in 30 days or less, can
> understand, remember, and carry out simple instructions,

and can handle changes in a routine work setting appropriately, but should perform no production rate pace work. She can tolerate occasional interaction with the public, coworkers, and supervisors.

(*Id*. at PageID.35.)

At step four, the ALJ found that, given her RFC, Kaiser could not perform any of her past relevant work. (*Id*. at PageID.39–40.) At step five, considering Kaiser's age, education, work experience, and RFC, the ALJ found that Kaiser could perform jobs that exist in significant numbers in the national economy, including the representative occupations of sorter (Dictionary of Occupational Titles ("DOT") 521.687-086), inspector (DOT 669.687-014), and assembler (DOT 713.687-018) (*Id*. at PageID.40–41.) Thus, the ALJ found Kaiser was not disabled from July 20, 2019 to February 7, 2022, the date of her decision. (*Id*. at PageID.41.)

### D.  **Factual Background Summary**

Before Kaiser filed the application for disability insurance benefits, she had undergone right hand fusion, left knee arthroscopy, bilateral reconstruction foot surgery, as well as nerve ablations to her back. (ECF No. 4-8, PageID.579–580.) She also had a history of diffuse widespread pain, particularly in her bilateral upper and lower extremities. (ECF No.

7

4-8, PageID.581.) As she testified at the January 4, 2022 hearing, all these conditions are related to her rheumatoid arthritis. (ECF No. 4-3, PageID.74.)

In February 2020, an examination at the Cleveland Clinic revealed rheumatoid arthritis with chronic deformities, including a fused right wrist. (ECF No. 4-8, PageID.583). The notes from that visit also reflect extensive superimposed fibromyalgia/central sensitization, which amplified many of Kaiser's symptoms. (*Id.*, PageID.584). Physical examination of Kaiser also revealed an antalgic gait,[1] leaning forward at waist, and positive Speed's test[2] in the shoulders bilaterally. (*Id.*, PageID.582–583.)

As the number of severe impairments noted by the ALJ suggests, medical evidence supports Kaiser's complaints of chronic bilateral upper and lower extremity pain, swelling, fatigue, and stiffness, weakness, and pain in the lower and middle back. (*See* ECF No. 4-8, PageID.582-584,

---

[1] Antalgic gait is "a characteristic gait resulting from pain on weight-bearing in which the stance phase of gait is shortened on the affected side." antalgic gait, Stedman's Medical Dictionary, Westlaw STEDMANS 359070 (2014).

[2] "Speed's test is a physical test performed to help detect certain biceps tendon injuries, including injury to the long head of the biceps tendon, presence of SLAP tears or tendinopathy in your shoulder." *See* https://my.clevelandclinic.org/health/diagnostics/22705-yergasons-test (last viewed Mar. 26, 2024).

629, 633, 636, 639; ECF No. 4-9, PageID.743, 750-751, 753, 756, 760, 773, 782, 785, 788, 797, 808, 815, 818, 831, 849.)

As Kaiser sets forth in her motion (*see* ECF No. 6, PageID.2776–2781), she frequently underwent tests and procedures between July 2019 and January 4, 2022, the date of her hearing. Those tests and procedures included multiple MRIs, x-rays, CT scans, and ultrasounds, as well physical examinations, that occurred in: July 2019 (ECF No. 4-8, PageID.640–641; ECF No. 4-9, PageID.1627), February 2020 (ECF No. 4-8, PageID.577–578, 582–584, 610), March 2020 (ECF No. 4-8, PageID.631), May 2020 (ECF No. 4-9, PageID.1245), June 2020 (ECF No. 4-10, PageID.2215–2216), August 2020 (ECF No. 4-10, PageID.2189), October 2020 (ECF No. 4-10, PageID.2234–2235), November 2020 (ECF No. 4-10, PageID.2251), January 2021 (ECF No. 4-10, PageID.2249, 2332), February 2021 (ECF No. 4-10, PageID.2339, 2358–2360, 2368), March 2021 (ECF No. 4-10, PageID.2443, 2445), May 2021 (ECF No. 4-10, PageID.2460), and October 2021 (ECF No. 4-10, PageID.2737, 2740). (*Id.*) Those tests consistently showed that Kaiser had a degenerative lumbar and cervical spine, as well as severe upper and lower extremity pain and limitations.

9

Kaiser testified at the hearing that she had eight procedures or surgeries in 2020, including three on her neck, one on her shoulder, one on her left hand, and two surgeries on her foot, all related to her rheumatoid arthritis. (ECF No. 4-3, PageID.73–74.) Kaiser also estimated that she had "probably over 20" emergency room visits "in the last couple years." (*Id.*, PageID.73.)

## II.    DISCUSSION

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final administrative decision. The Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (citations and internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. In determining whether substantial evidence supports the ALJ's decision, the Court does "not try

the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007) (citation omitted); *see also Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

The Court's review is limited to an examination of the record. *Bass*, 499 F.3d at 512–13. The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001) (citation omitted). A finding of substantial evidence must be based on the whole record and must take evidence into account that fairly detracts from its weight. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990) (citations omitted).

However, an error of law denotes a lack of substantial evidence requiring remand. *See Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 410 (6th Cir. 2009) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d at 546 (discussing errors of law regarding the now defunct treating physician rule). Failure to follow agency regulations is an error of law. *See id*. An error of law may, however, still be harmless. *See id*. at 409.

11

If the Commissioner's decision is supported by substantial evidence, it "must be affirmed even if the reviewing court would decide the matter differently . . . and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). The substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). Moreover, the ALJ is not required to discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006).

## B.   Analysis

Kaiser asserts that the Commissioner's final decision to deny her disability insurance benefits contains errors of law and is unsupported by substantial evidence. (ECF No. 6, PageID.2786.) Kaiser contends that the ALJ failed to follow agency regulations, created an inaccurate RFC, improperly evaluated Kaiser's subjective symptoms, and improperly evaluated the medical opinions. (*Id.*) The Court finds that the ALJ erred by failing to adhere to agency regulations when the ALJ did not address

critical evidence in the record that appears to be inconsistent with the RFC limitations the ALJ established.

An RFC is "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1). The agency clarifies:

> RFC is an assessment of an individual's ability to do **sustained work-related physical and mental activities** in a work setting on a regular and continuing basis. A "regular and continuing basis" **means 8 hours a day, for 5 days a week**, or an equivalent work schedule.

SSR 96-8p (July 2, 1996) (emphasis added). The agency will use the relevant medical and other evidence in the record when determining a claimant's RFC. 20 C.F.R. § 404.1545(a)(3). This includes medical opinions from the treating and non-treating medical providers, as well as "**descriptions and observations of [claimant's] limitations from [claimant's] impairment(s), including limitations that result from [claimant's] symptoms, such as pain, provided by [claimant]**, [claimant's] family, neighbors, friends, or other persons." *Id.* (emphasis added) (citing 20 C.F.R. §§ 404.1512(c), (d); 404.1513; 404.1545(e); and 404.1529).

The Court finds that the ALJ failed to satisfy the requirements of SSR 16-3p. SSR 16-3p demands that the ALJ evaluate the consistency of

a plaintiff's statements, without reaching the question of overall credibility, or character for truthfulness. *See Brothers v. Berryhill*, 2017 WL 2912535, at *11 (N.D. Ohio June 22, 2017) ("In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person.").

When evaluating a plaintiff's intensity, persistence, and limiting effects of the Plaintiff's subjective symptoms, the ALJ must consider the seven factors listed in SSR 16-3p and 20 C.F.R. § 404.1529. Those factors include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning

14

functional limitations and restrictions due to pain or other symptoms. SSR 16-3p.

Here, the ALJ stated that Kaiser's statements regarding the intensity, persistence, and limiting effects of Kaiser's symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (ECF No. 4-3, PageID.36.) The ALJ further stated that Kaiser's "physical and mental examinations have been unremarkable. The claimant frequently appears to be in no distress, and she shows normal range of motion in her neck, normal muscle tone, normal coordination, a normal gait, and no sensory deficits." (ECF No. 4-3, PageID.38.)

The Court finds that the limitations and restrictions in the RFC are "not entirely consistent with the medical evidence and other evidence in the record" (ECF No. 4-3, PageID.36.), generally do not address whether Kaiser's testimony is consistent with and supported by the medical record, and do not appear to be supported by substantial evidence. The ALJ's failure is significant and requires remand in this case, where Kaiser's statements of her limitations and restrictions appear to be consistent with and supported by the medical evidence in the record.

Initially, the Court notes that the ALJ acknowledged that Kaiser has been diagnosed with rheumatoid arthritis. (ECF No.4-3, PageID.37.). Rheumatoid arthritis "is a disease of up and downs. . . . These symptom episodes — called flares — can be unpredictable and debilitating." (*See* ECF No. 9, PageID.2829 (quoting *Understanding Rheumatoid Arthritis Flares*, Arthritis Foundation website (https://www.arthritis.org/diseases/more-about/understanding-rheumatoid-arthritis-flares) (last visited March 20, 2024)).) As the ALJ noted, Kaiser has tried and failed many medications to treat her rheumatoid arthritis, including Enbrel, Humira, Orencia, Simponi Arava, Plaquenil, Remicade, xeljanz, and methotrexate. (*See* ECF No. 4-3, PageID.36 ("Anti-rheumatic medications generally have not been effective in controlling her symptoms."); ECF No. 4-9, PageID.851.) Nonetheless, the ALJ failed to expressly discuss the many issues and limitations that Kaiser claimed rheumatoid arthritis and related conditions presented for Kaiser.

First, the ALJ states that the RFC assessment "accommodates the claimant's functional limitations by limiting her to a restricted form of sedentary work with additional postural limitations and limitations on both gross and fine manipulation." (ECF No. 4-3, PageID.38). That

16

statement is inconsistent with parameters of the RFC, which does not allow for breaks, changing positions, the need to lay down, or being off task due to severe pain, all of which the medical records and Kaiser's testimony indicate are necessary.

It also reflects the ALJ's failure to assess the extent of several of Kaiser's conditions and how she would be able to perform the tasks required. Specifically, the ALJ did not explain how Kaiser's bilateral upper extremity pain and weakness, combined with her lower extremity pain, weakness and swelling and mid-to-lower back pain would impact her capacity to perform sedentary work that requires sitting six hours in an eight-hour workday. (*See* ECF No. 4-8, PageID.582-584, 629, 633, 636, 639; ECF No. 4-9, PageID.743, 750-751, 753, 756, 760, 773, 782, 785, 788, 797, 808, 815, 818, 831, 849.) The ALJ also did not address Kaiser's ability to even work eight-hour workdays five days a week. Kaiser has not worked at that level since 2019.

Second, the RFC "restricts" Kaiser to **frequent** gross and fine manipulation. (ECF No. 4-3, PageID.35 ("she can frequently engage in gross and fine manipulation").) Frequent gross and fine manipulation, on its face, does not appear to be consistent with the capacity of a person

17

suffering from significant rheumatoid arthritis. Frequent gross and fine manipulation is inconsistent with Kaiser's capacity for activities of daily living, as set forth in the medical documentation and Kaiser's testimony at the hearing. For example, Kaiser reported that she hired a caregiver who provides help with cooking and housework two day a week (ECF No. 4-8, PageID.581), she can only make simple meals herself and generally has help making any meals (ECF No. 4-3, PageID.75; ECF No. 4-8, PageID.581), and her husband generally helps her to get dressed (ECF No. 4-3, PageID.75; ECF No. 4-8, PageID.581). Kaiser also claims to have functional difficulty with using utensils, donning/doffing socks and shoes, toileting and wiping herself, putting a cup in the microwave, emptying the dishwasher, squatting, and getting on and off the toilet. (ECF No. 4-8, PageID.581–582.)

If Kaiser cannot accomplish those tasks, the Court finds the RFC does not incorporate all of Kaiser's limitations, limitations that may restrict, and may preclude, Kaiser's ability to perform the tasks required of a sorter, inspector, or assembler. The ALJ, however, did not discuss: (a) Kaiser's activities of daily living, including whether and how Kaiser, who appears to have minimal independence in activities of daily living,

could accomplish the tasks associated with being a sorter, inspector, or assembler; or (b) whether Kaiser's testimony was inconsistent with the record. Pursuant to 20 C.F.R. § 404.1545(a)(3), the ALJ had to consider the relevant medical and other evidence in the record, including "descriptions and observations of [claimant's] limitations from [claimant's] impairment(s), including limitations that result from [claimant's] symptoms, such as pain, provided by [claimant]," *id.* (citing 20 C.F.R. §§ 404.1512(c), (d); 404.1513; 404.1545(e); and 404.1529), when determining a claimant's RFC.

Third, Kaiser's claims that she is bed bound as often as half the days in a month and calls off work one to two times per week for a part-time job that she only worked three to four hours per day, three days per week. (*See, e.g.*, ECF No. 4-3, PageID.71-73 (Kaiser testified that she is in bed approximately half of the month, calls in "at least seven to ten days" and sometimes misses work weeks at time); ECF No. 6, PageID.2791.)

Kaiser's claims are supported by evidence that she has continued to regularly have as many as two flares per month, despite treatment, which result in Kaiser being bed bound for at least the day. (*See, e.g.*,

ECF No. 4-9, PageID.757, 760.) Kaiser's testimony also is consistent with an October 7, 2020 function report that documents the severity of Kaiser's rheumatoid arthritis, including pain that affects her hands, shoulders, feet, neck, and back, and recurring "flares" that can leave Kaiser "bed bound," unable to brush her hair or teeth, or dress or shower herself. (*See* ECF No. 4-7, PageID.290–297). Further, the function report states, "Mrs. Kaiser did not type out this form herself. Due to her hands, she is unable to write or type–she provided her oral answers." (*Id.*, PageID.297.)

The ALJ's decision is devoid of any mention of Kaiser's claims that Kaiser is unable to work multiple days each month, often more than once a week. That deficiency is significant in light of the RFC formulated by the ALJ. Based on that RFC, the VE opined at the January 4, 2022 hearing that a person with those restrictions would be able to perform several jobs in the economy: sorter, inspector, and assembler. (ECF No. 4-3, PageID.40–41, 89.)  At the hearing, however, the ALJ specifically asked the VE whether the VE's conclusion would be affected if a person had "two or more unexcused or unscheduled absences per month on an ongoing basis?" The VE responded, "**it's preclusive**. Employers at best

will tolerate one day per month of unscheduled or unexpected absences on a persistent basis." (*Id.*, PageID.89–90 (emphasis added).)

The Court finds that the ALJ's follow-up question to the VE shows that the ALJ was cognizant of Kaiser's claimed need to call off work regularly (at least several, and certainly more than two, days per month). Notwithstanding that recognition and that the VE stated that such a volume of unscheduled absences would preclude any employment, the ALJ did not: (a) include that restriction in the RFC; or (b) mention that, let alone explain how, Kaiser's testimony was not consistent with the medical record. The Court finds that the ALJ's failure requires that it remand this matter to the agency for a determination whether Kaiser's purported need to call off work several times a month with respect to a job that she had only worked three to four hours per day, three days per week would preclude her from any substantial gainful activity.

Similarly, the ALJ does not address the regularity of Kaiser's flares or Kaiser's assertions that she often is in too much pain to get out of bed. As those statements are inconsistent with the RFC, which presumes that Kaiser will make it to work every day, the Court concludes that the ALJ needs to determine whether Kaiser's testimony is supported by the

record. Then, if Kaiser's testimony is supported by the record, the ALJ must determine whether those limitations are work preclusive or factor those limitations into the RFC.

Finally, the record reflects that Kaiser was answering phones at a doctor's office, not working as a nurse, between September 2019 and March 2020. (ECF No. 4-3, PageID.71–73). The ALJ appears to have misunderstood Kaiser's duties during that time, as the ALJ's decision states, "she remains able to . . . work at least part-time as a nurse." (ECF No. 4-3, PageID.34.) The ALJ's misinterpretation may have impacted the ALJ's view of Kaiser's capacity to perform work, so the ALJ should address that discrepancy upon remand.

For the foregoing reasons, the Court finds that the ALJ's RFC assessment for Kaiser does not satisfy SSR 96-8p, which requires:

> [A] narrative discussion describing how the evidence supports each Conclusion, citing specific medical facts, and nonmedical evidence. In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. **The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved**.

SSR 96-8p (July 2, 1996) (emphasis added).

The Court concludes that the ALJ's assessment failed to comply with the agency's rulings and regulations, lacks an appropriate discussion regarding Kaiser's testimony, appears to be inconsistent with the record, and does not appear to be supported by substantial evidence. Accordingly, the Court remands this matter to the agency to address the many deficiencies in the ALJ's decision, as discussed in this Order, especially the ALJ's consideration of Kaiser's subjective symptoms in light of the medical record.[3]

## III.  CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Kaiser's motion for summary judgment (ECF No. 6) is **GRANTED IN PART AND DENIED IN PART**; it is **GRANTED** to the extent that Kaiser seeks remand of the case to the agency, and it is **DENIED** to the extent Kaiser seeks an award of benefits.

---

[3] Kaiser contends that the ALJ inaccurately assessed Dr. Karo's opinion as failing to quantify Kaiser's functional limitations. (ECF No. 6, PageID.2797, citing ECF No. 4-3, PageID.39.) The Court does not reach this argument but instructs the ALJ to revisit Dr. Karo's evaluation upon remand, as well as those of all the medical opinions, in light of this Order.

23

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment (ECF No. 8) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **REMANDED** to the agency for further proceedings consistent with this order.

**SO ORDERED**.

Dated:   March 26, 2024            s/**Jonathan J.C. Grey**
                                   Jonathan J.C. Grey
                                   United States District Judge

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 26, 2024.

<u>s/ **S. Osorio**</u>
Sandra Osorio
Case Manager